******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

J. B. *v.* K. B.*
(AC 46764)

Cradle, C. J., and Clark and Keller, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant had previously been dissolved, appealed from the trial court's judgment ordering the plaintiff to reimburse the defendant for certain medical and dental expenses incurred by their child after she had reached the age of majority. The plaintiff claimed that the court erred when it ordered him to pay 96 percent of those expenses in the absence of any express language in the parties' separation agreement requiring the parties to pay postmajority medical and dental expenses. *Held*:

The trial court erred in construing the parties' separation agreement unambiguously to require the plaintiff to reimburse the defendant for the child's postmajority medical and dental expenses because, as there was more than one reasonable interpretation of the agreement, the agreement was ambiguous as to whether the parties were obliged to pay those expenses, and, accordingly, the case was remanded for the trial court to make a factual determination regarding the intent of the parties, after consideration of any extrinsic evidence presented by the parties concerning that issue.

Argued April 24—officially released August 5, 2025

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Klatt, J.*; judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Moses, J.*, denied the defendant's motion for contempt and entered a remedial order regarding certain expenses to be paid by the plaintiff; subsequently, the court, *Moses, J.*, denied the plaintiff's motion to reargue and the plaintiff appealed to

---

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

this court; thereafter, the court, *Moses, J.*, sua sponte issued an order correcting the remedial order, and the plaintiff amended his appeal. *Reversed in part*; *further proceedings.*

*Richard W. Callahan*, for the appellant (plaintiff).

*K. B.*, self-represented, the appellee (defendant).

*Opinion*

CLARK, J. This appeal arises from a postjudgment motion for contempt filed by the self-represented defendant, K. B., alleging that the plaintiff, J. B., wilfully failed to comply with a prior court order modifying certain provisions of the parties' separation agreement, which had been incorporated into their judgment of dissolution, concerning the parties' obligation to pay for the unreimbursed medical and dental expenses for their daughter, K. The plaintiff claims that the court erred by entering a remedial order requiring him to reimburse the defendant for the cost of unreimbursed medical and dental expenses incurred after K reached the age of majority. We reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The parties were married on August 29, 1998, and had two children: G, born in April, 2001, and K, born in May, 2003. On October 21, 2011, the court, *Klatt, J.*, rendered a judgment of uncontested dissolution, incorporating by reference the terms of a separation agreement executed by the parties on the same date (separation agreement).

Article III of the separation agreement governs alimony and child support. Section 3.2 governs child support and provides in relevant part: "(a) In light of the shared custody arrangement, neither party shall pay child support to the other. . . . (b) In the event the shared custodial arrangement is no longer feasible due

to the [plaintiff's] procurement of employment, the [defendant] shall be entitled to seek a modification of said agreement, and may petition the court for child support. . . . (c) The parties shall equally share in the cost of all agreed upon extracurricular activities of the children, and . . . equally share the cost of all unreimbursed medical [and] dental expenses."

Article VII of the separation agreement, titled "Medical and Hospitalization Insurance and Expenses," governs the parties' obligations to provide health insurance and to pay for the health care expenses of the children. Two provisions of article VII are relevant to this appeal. First, section 7.3 provides: "The parties' obligation to maintain insurance coverage for the children shall extend until each of them attains the age of nineteen (19) or, if either or both attend college, through the age of twenty-three (23)." Second, section 7.4 provides: "All unreimbursed medical, dental, orthodontic, psychological, [and] psychiatric expenses incurred on behalf of the children shall be shared equally by the parties."[1]

In the years since the judgment of dissolution, the court has entered several orders pertaining to the parties' obligation to pay for the children's unreimbursed medical and dental expenses. On October 2, 2013, the

---

[1] Section 7.1 of the separation agreement provides in relevant part: "The [plaintiff] shall maintain the existing medical, dental, major medical and hospitalization insurance, on behalf of the children, for so long as his COBRA coverage is available. . . ."

Section 7.2 of the separation agreement provides: "Upon the [plaintiff's] procurement of employment, if health insurance coverage for the children is available, he will pay for same. In the event he remains unemployed at the termination of COBRA coverage, or if health insurance coverage for the children is not available in his new employment, the parties shall share the cost of said health insurance coverage. This provision is subject to modification by either party."

Section 7.5 of the separation agreement provides: "Prior to incurring any additional voluntary, i.e. nonemergency, unreimbursed medical expenses on behalf of the children, each party shall obtain the consent of the other, which consent shall not be unreasonably withheld."

defendant filed a motion to modify the allocation of unreimbursed medical expenses and extracurricular activity expenses on the basis that the plaintiff, who was unemployed at the time of dissolution, had since obtained employment. On January 7, 2014, the court, *Owens*, *J.*, granted the defendant's motion and ordered that "[t]he extracurricular activities and unreimbursed medical expenses are divided 67 percent to the plaintiff . . . and 33 percent to the defendant . . . ." The plaintiff moved for reargument on January 24, 2014. The court agreed to hear reargument but, on May 14, 2014, reaffirmed the January 7, 2014 order.

On September 18, 2014, the plaintiff filed a motion for modification of the court's January 7, 2014 order regarding the division of unreimbursed medical expenses and extracurricular activity expenses. On October 30, 2014, following a hearing, the court, *Owens*, *J.*, granted the plaintiff's motion. The court ordered that "[t]he unreimbursed expenses shall be divided 60 percent to the [plaintiff] and 40 percent to the [defendant]." The plaintiff filed motions for articulation and reargument on November 12, 2014, both of which were denied.

On December 12, 2014, the plaintiff appealed from the judgment denying his motion for reargument. On June 26, 2015, however, the parties entered into a stipulated agreement (2015 agreement) that resolved the plaintiff's appeal. The parties agreed, inter alia, that "[t]he current allocation of extracurricular and unreimbursed medical expenses . . . shall remain 60 percent to the plaintiff and 40 percent to the defendant as ordered by the court on October 30, 2014," and that "[n]either party shall file a request to modify the current allocation of extracurricular and unreimbursed medical expenses without a substantial change in circumstances."

On May 8, 2019, the plaintiff filed a motion for an order regarding postsecondary education expenses for

G.[2] On June 20, 2019, the parties appeared before the court, *E. Rodriguez, J.*, at which time they indicated that they had come to an agreement concerning their respective obligations with respect to G's postsecondary education expenses (2019 agreement).[3] The court canvassed the parties and entered the 2019 agreement as an order of the court. The 2019 agreement provides, inter alia, that the defendant would "continue to maintain health insurance for the benefit of [G] pursuant to the . . . separation agreement" and that "[t]he current orders that obligate the plaintiff to pay for 60 percent and the defendant to pay for 40 percent of the reason-

[2] Section 11.3 of the separation agreement provides that "[t]he court shall retain jurisdiction over the parties for the purpose of entering educational support orders pursuant to [General Statutes] § 46b-56c."

General Statutes § 46b-56c provides in relevant part: "(a) For purposes of this section, an educational support order is an order entered by a court requiring a parent to provide support for a child or children to attend for up to a total of four full academic years an institution of higher education or a private career school for the purpose of attaining a bachelor's or other undergraduate degree, or other appropriate vocational instruction. An educational support order may be entered with respect to any child who has not attained twenty-three years of age and shall terminate not later than the date on which the child attains twenty-three years of age.

"(b) (1) On motion or petition of a parent, the court may enter an educational support order at the time of entry of a decree of dissolution, legal separation or annulment, and no educational support order may be entered thereafter unless the decree explicitly provides that a motion or petition for an educational support order may be filed by either parent at a subsequent date. . . .

* * *

"(g) The educational support order may include support for any necessary educational expense, including room, board, dues, tuition, fees, registration and application costs, but such expenses shall not be more than the amount charged by The University of Connecticut for a full-time in-state student at the time the child for whom educational support is being ordered matriculates, except this limit may be exceeded by agreement of the parents. An educational support order may also include the cost of books and medical insurance for such child. . . ."

[3] The parties initially appeared for a hearing on the plaintiff's motion on June 6, 2019. At that time, the defendant requested additional time to consider the draft agreement because she had just received a copy of it the day before the hearing. The court granted that request.

able and necessary unreimbursed medical and dental expenses incurred for the benefit of [G] shall remain in effect."[4]

On January 22, 2021, the defendant filed a motion to modify various aspects of the parties' obligations under the separation agreement and subsequent orders. As relevant to this appeal, the defendant first requested that the court modify the separation agreement by requiring the plaintiff to pay monetary child support for K retroactive to March, 2020, and "through the date she begins college . . . ." The defendant also requested that the court modify the allocation of unreimbursed medical and dental expenses and extracurricular activity expenses that the parties were required to pay on behalf of the children, as established by the 2015 agreement, on the basis that "the plaintiff's income has increased substantially and is well in excess of [the defendant's] current salary and capacity to earn."[5] (Emphasis omitted.) The defendant did not reference any time period in connection with her request to modify the allocation of expenses.

While the defendant's motion for modification was pending, on June 10, 2021, the plaintiff filed a motion for an order regarding postsecondary education expenses for K. In his motion, the plaintiff noted that K was eighteen years old and would be starting college later

___

[4] The 2019 agreement also set forth the amount each party was required to contribute toward G's tuition and other expenses she incurred while attending college.

[5] The defendant also asked the court to modify the 2019 agreement concerning G's postsecondary education expenses by adjusting the parties' respective obligations to contribute to G's tuition and other expenses "to more appropriately reflect [their] individual means," to order the plaintiff to provide an accounting of the college savings account the parties had established for G during their marriage, to excuse the defendant from paying her share of any past due expenses, and to require the plaintiff to pay 100 percent of certain dental expenses incurred on behalf of K. Those requests are not relevant to this appeal.

that year, and that the parties had been unable to reach an agreement concerning her postsecondary education expenses. The plaintiff requested that the court enter an order pursuant to General Statutes § 46b-56c concerning the parties' obligations with respect to K's postsecondary education expenses.

Beginning on December 20, 2021, the court, *M. Moore, J.*, held a trial on the defendant's motion for modification and the plaintiff's motion for an order regarding K's postsecondary education expenses.[6] Prior to trial, on December 15, 2021, the defendant filed proposed orders regarding the issues raised in her motion. With respect to her request that the court modify the allocation of unreimbursed medical expenses, the defendant requested that the court enter the following order: "For so long as the defendant is employed and her employer provides family coverage for health insurance, the defendant will continue to provide health insurance for the children until they reach the age of twenty-three, or obtain employment which provides them health insurance benefits (whichever occurs first). While the children are insured under [the defendant's] health insurance coverage, the plaintiff will reimburse the defendant 93 percent of all premiums paid by the defendant for the children's health insurance coverage, together with 93 percent of unreimbursed medical expenses."

On September 9, 2022, Judge Moore entered an order on the defendant's motion for modification (2022 order). Addressing first the defendant's request for monetary child support, the court noted that "[t]he motion for modification was served [on] the defendant on April 27, 2021," and that "[K] [had] turned [eighteen] on May 18, 2021." The court then noted that, at the

---

[6] The trial before Judge Moore also concerned two motions, a motion for contempt that had been filed by the plaintiff and a motion for attorney's fees that had been filed by the defendant. Those two motions are not relevant to this appeal.

time of the separation agreement, both parties were unemployed and "neither party was to pay child support to the other based on the shared custody arrangement for the children." The court found that the plaintiff's income had increased substantially since the time of the separation agreement and that his change in income constituted "a substantial change in circumstances which justifies modification of child support." On the basis of those findings, the court ordered the plaintiff to pay child support in the amount of "$454 per week for a period of April 27, 2021 . . . [through] the date [K] turned [eighteen] for a total of [three] weeks for a total of $1362 owed to the defendant."

With respect to the defendant's request to modify the allocation of unreimbursed medical expenses, the court noted that, pursuant to the 2015 agreement, which was the last order concerning the division of such expenses, "the parties were to pay extracurricular and unreimbursed medical expenses for the children 60 percent to be paid by the plaintiff and 40 percent to be paid by the defendant . . . ." (Citation omitted.) The court found that there was "a substantial change in circumstances to justify a modification of the payment of expenses for the children as agreed in the 2015 agreement" on the basis that the plaintiff's income had increased substantially since the time of the 2015 agreement. The court ordered: "The plaintiff shall pay 96 percent and the defendant shall pay 4 percent of the unreimbursed medical and dental expenses and agreed upon extracurricular expenses. Said modification is retroactive to the date of the service upon the plaintiff of the motion for modification (April 27, 2021)." The order did not indicate the date on which the parties' obligation to pay those expenses would terminate.[7]

---

[7] On the same date as the 2022 order, Judge Moore issued a separate order on the plaintiff's motion for an order regarding K's postsecondary education expenses. The court ordered the plaintiff to pay 96 percent, and the defendant to pay 4 percent, "of the maximum amount pursuant to [§] 46b-56c of [K's] educational expenses . . . after the application of grants,

On October 5, 2022, the defendant filed a motion for clarification of several aspects of the 2022 order. As relevant to this appeal, the defendant requested that the court clarify, with respect to the portion of the order modifying the allocation of unreimbursed medical and dental expenses and extracurricular activity expenses, "whether the subject expenses include only those expenses incurred for the [children] prior to their eighteenth . . . birthdays." The court denied the defendant's motion for clarification on October 24, 2022.

On December 7, 2022, the defendant filed a motion for contempt. In that motion, the defendant claimed that the plaintiff had violated the 2022 order by failing to pay 96 percent of the children's unreimbursed medical and dental expenses for the period April 27, 2021 (the retroactive date in the 2022 order), through October 31, 2022, and by failing to reimburse the defendant for 96 percent of the cost of health insurance for the children during the same period.

While the defendant's motion for contempt was pending, on March 29, 2023, the plaintiff filed a motion for clarification of the 2022 order. The plaintiff asserted that "[t]here is no clear and unambiguous order regarding either party's obligation to contribute to any expenses for the benefit of [K] now that she has aged out of child support," and requested that the court clarify whether the 2022 order required the parties to pay for K's postmajority unreimbursed medical and dental expenses.[8] On April 3, 2023, the court, *M. Moore, J.*, denied the plaintiff's motion.

loans and college savings accounts. . . . The expenses to be paid for [K] are pursuant to [§] 46b-56c. This order shall remain in effect until [K] attains twenty-three years of age." Nothing in this order addresses the parties' obligations to pay for K's unreimbursed medical expenses.

[8] The plaintiff did not ask the court to clarify whether the 2022 order required him to pay for any of G's unreimbursed medical and dental expenses. As we explain subsequently in this opinion, the plaintiff has conceded before this court that the 2019 agreement required the parties to pay for such expenses on behalf of G until she reached the age of twenty-three.

On July 6, 2023, following a two day trial, the court, *Moses*, *J.*, entered an order on the defendant's motion for contempt. In the order, the court first summarized the parties' positions as follows: "The defendant . . . alleges that [the 2022 order] was clear and unambiguous in its requirement that the plaintiff . . . pay 96 percent of the unreimbursed medical and dental expenses and extracurricular activities retroactive to April [27], 2021.[9] She argued that [the 2022 order] modified [sections 7.2 and 7.4 of the separation agreement]. Section 7.2 provides in relevant part that 'if health insurance coverage for the children is not available in [the plaintiff's] new employment, the parties shall share the cost of said health insurance coverage.' Section 7.4 provides that '[a]ll unreimbursed medical, dental, orthodontic, psychological, [and] psychiatric expenses incurred on behalf of the children shall be shared equally by the parties.' She also argues that [the 2022 order's] modification of the amount of unreimbursed expenses each party should pay must be read in conjunction with section 7.3 of the separation agreement, which provides: 'The parties' obligation to maintain insurance coverage for the children shall extend until each of them attains the age of [nineteen] or, if either or both attend college, through the age of twenty-three . . . .' " (Footnote added.) The court further explained that, "[w]hile there is no dispute that the children . . . were attending college when the relevant costs were incurred and under the age of twenty-three, the plaintiff . . . disagrees that [the 2022 order] was clear and unambiguous as to whether he was required to pay 96 percent of the unreimbursed medical and dental [expenses] after the children turned the age of eighteen years old, even if they were in college, and whether [the 2022 order] modifies

---

[9] The initial order on the motion for contempt indicated that the retroactive date was April 21, 2021. In response to an order of this court, however, the trial court issued an articulation clarifying that, consistent with the 2022 order, the retroactive date was April 27, 2021.

sections 7.2 and 7.4 [of the separation agreement]. He also argues that [any alleged violation of the 2022 order was not willful because] he filed a motion for clarification on [the 2022 order] that was denied by the court."[10]

With respect to the allocation of unreimbursed medical expenses, the court found "by clear and convincing evidence that the plaintiff . . . was in violation of a clear and unambiguous court order requiring him to pay 96 percent of the unreimbursed medical and dental expenses and extracurricular activities retroactive to April [27], 2021, and until his children turned 'the age of [nineteen] or, if either or both attend college, through the age of twenty-three . . . .' This order clearly modified the requirement that the parties 'equally share' unreimbursed medical and dental expenses as provided in section 7.4 [of the separation agreement]." The court further found, however, that the plaintiff's violation of that order was not wilful. Specifically, although the court "[did] not find ambiguity in [the 2022 order] requiring the [plaintiff] to pay 96 percent of the unreimbursed medical and dental expenses until his children turn twenty-three," it found "that the [plaintiff] sincerely was unsure about his obligation, and correctly sought clarification."

With respect to the allocation of the cost of health insurance premiums for the children, the court "disagree[d] that [the 2022 order] was clear and unambiguous as it pertains to a modification of section 7.2 [of the separation agreement]. It is not clear what, if any court order modified the requirement that the parties

---

[10] The plaintiff also argued before the trial court that, even if the 2022 order did require him to pay 96 percent of the children's unreimbursed medical expenses after they reached the age of majority, he did not violate that order because the expenses were incurred without his knowledge or consent in violation of section 7.5 of the separation agreement. The court rejected that argument, however, and the plaintiff does not challenge that portion of the court's decision on appeal.

'share the cost of said health insurance coverage,' and the percentage share.''

The court therefore denied the defendant's motion for contempt, but entered a remedial order requiring the plaintiff "to reimburse the [defendant] for 96 percent of the unreimbursed medical and dental expenses and [the cost of] extracurricular activities retroactive to April [27], 2021, and until his children turn the 'age of [nineteen] or, if either or both attend college, through the age of twenty-three . . . .' The [plaintiff] is also responsible for any late fees, interest, and other charges accrued." The plaintiff filed a motion for reargument on July 19, 2023, which the court denied the following day.

The plaintiff filed the present appeal on August 7, 2023. On November 2, 2023, the court, *Moses, J.*, sua sponte, entered an order correcting the July 6, 2023 remedial order (corrected order). The corrected order provides: "As a remedial order, the plaintiff . . . is ordered to comply with paragraph 2 of the [2022 order] . . . . The second paragraph [of the 2022 order], titled 'Modification of Division of Costs for the Expenses of the Children,' provides that the plaintiff is ordered to pay 96 percent of all unreimbursed medical and dental expenses and agreed upon extracurricular activities for 'the children.' . . . The only issue before this court on the defendant's motion for contempt . . . was the plaintiff's compliance with [the 2022 order] as it related to the payment of unreimbursed medical and dental expenses the defendant paid on behalf of the children during the relevant time period. To make the defendant whole, the court orders the plaintiff to, in accordance with [the 2022 order], reimburse the defendant for 96 percent of the unreimbursed medical and dental expenses she has incurred, including late fees, interest, and penalties." On November 30, 2023, the plaintiff filed an amended appeal to challenge the corrected order.[11]

----

[11] On August 20, 2024, the plaintiff again amended his appeal to challenge two additional orders of the court entered on July 31, 2024. First, in connec-

On October 2, 2024, this court, sua sponte, ordered the court to articulate, inter alia, "what it meant when it stated in [the corrected order] that the second paragraph of Judge Moore's [2022 order] required the [plaintiff] to pay 96 percent of all unreimbursed medical and dental expenses and agreed upon extracurricular activities for 'the children.' " On October 7, 2024, the court articulated that "[t]he language [of the corrected order] should have tracked [the 2022 order] . . . [which] states the following, in relevant part: 'The plaintiff shall pay 96 [percent] and the defendant shall pay 4 [percent] of the unreimbursed medical and dental expenses and agreed upon extracurricular expenses. Said modification is retroactive to the date of the service upon the plaintiff of the motion for modification (April 27, 2021).' "

On appeal, the plaintiff claims that the court erred in entering the remedial order requiring him to reimburse the defendant for 96 percent of K's unreimbursed medical and dental expenses that were incurred after K reached the age of majority. The plaintiff concedes that, pursuant to the 2019 agreement, the parties agreed to pay for such expenses on behalf of G, and, therefore,

tion with a motion for contempt filed by the defendant, the court entered a remedial order requiring the plaintiff to pay for a portion of K's college textbooks. Second, in connection with a motion by the defendant for an order requiring the plaintiff to reimburse her for health insurance premiums she paid on behalf of the children, the court entered an order denying the plaintiff's claim that the motion was barred by collateral estoppel. Although the plaintiff filed an amended appeal form in which he indicated that he intended to appeal both orders, he failed to present any argument or analysis with respect to either issue in his principal appellate brief or his reply brief. Accordingly, to the extent that the plaintiff claims that the court erred in entering these orders, we decline to review such claims. See *Buchenholz* v. *Buchenholz*, 221 Conn. App. 132, 142 n.6, 300 A.3d 1233 ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.)), cert. denied, 348 Conn. 928, 304 A.3d 860 (2023).

he does not challenge the remedial order to the extent that it requires him to reimburse the defendant for expenses incurred on behalf of G. The plaintiff argues, however, that "[t]here is nothing in the history of the parties' agreements or the court's orders that supports the trial court's finding that the 2022 order . . . required the plaintiff to pay for the postmajority [medical and dental] expenses of his adult child [K]." The defendant contends that the court properly concluded that the 2022 order required the plaintiff to reimburse her for 96 percent of K's unreimbursed medical and dental expenses until she reached the age of twenty-three. Specifically, she argues that the separation agreement requires the parties to pay for the children's medical and dental expenses through the age of twenty-three, and that "[n]owhere in [the 2022] order [did] Judge Moore specify that the healthcare expenses made subject to retroactive reallocation were limited to 'premajority' medical or dental expenses." (Emphasis omitted.)

Before addressing the plaintiff's claim, we clarify the issue that is before us in this appeal. Although the court entered the remedial order based on its conclusion that the plaintiff had violated the 2022 order, we do not construe the court's rulings as determining that the 2022 order expressly required the plaintiff to pay for K's postmajority medical and dental expenses. As stated previously, the 2022 order was silent on the issue of whether the parties were obligated to pay for the children's unreimbursed medical expenses past the age of majority, and the defendant did not argue before the trial court that the 2022 order expressly required the plaintiff to pay such expenses. Rather, as the court explained in its ruling on the defendant's motion for contempt, the defendant argued that the 2022 order "must be read in conjunction with section 7.3 of the separation agreement, which provides: 'The parties'

obligation to maintain insurance coverage for the children shall extend until each of them attains the age of [nineteen] or, if either or both attend college, through the age of twenty-three . . . ." Moreover, although the court found that the 2022 order "clear[ly] and unambiguous[ly] . . . require[d] [the plaintiff] to pay 96 percent of the unreimbursed medical and dental expenses and extracurricular activities retroactive to April [27], 2021, *and until his children turned the 'age of [nineteen] or, if either or both attend college, through the age of twenty-three,'* " the italicized portion of the court's ruling does not appear in the 2022 order. Rather, that language appears in section 7.3 of the separation agreement. In addition, during oral argument before the trial court, when the plaintiff argued that "nowhere in [the 2022] order . . . does Judge Moore say that her orders [reallocating the parties' obligation to pay for the children's unreimbursed medical and dental expenses] continue past the age of majority," the court responded: "I get that, but . . . the [separation] agreement does say that." Finally, on appeal, the parties focus on whether the separation agreement requires them to pay for K's unreimbursed medical and dental expenses through the age of twenty-three.[12] Accordingly, we focus our analysis on the question of whether, in entering the remedial order, the court correctly construed the parties' separation agreement.

The following legal principles and standard of review guide our resolution of this appeal. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judg-

---

[12] Although the defendant argues on appeal that "[a] plain reading of [the 2022 order] indicates Judge Moore's intention to modify the parties' obligation to contribute towards unreimbursed medical and dental expenses and to make that modification effective" until K reaches the age of twenty-three, she does not argue that the 2022 order contains any language expressly addressing that issue. Rather, the defendant's argument is based on her contention that the separation agreement requires the parties to pay for K's unreimbursed medical and dental expenses through the age of twenty-three,

ment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact. . . . When the language is clear and unambiguous, however, the contract must be given effect according to its terms, and the determination of the parties' intent is a question of law. . . .

"A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . .

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract

and that "[n]owhere in her order does Judge Moore specify that the health-care expenses made subject to retroactive reallocation were limited to 'premajority' medical and dental expenses." (Emphasis omitted.)

must emanate from the language used by the parties.
. . . The contract must be viewed in its entirety, with
each provision read in light of the other provisions . . .
and every provision must be given effect if it is possible
to do so. . . . If the language of the contract is suscepti-
ble to more than one reasonable interpretation, the
contract is ambiguous. . . . The threshold question of
whether contractual language is itself ambiguous is a
question of law over which our review is plenary." (Cita-
tion omitted; internal quotation marks omitted.) *Simp-
son* v. *Simpson*, 352 Conn. 81, 94–96, 335 A.3d 472
(2025).

Two provisions of the separation agreement concern
the parties' obligation to pay for the children's unreim-
bursed medical and dental expenses. First, section 3.2
(c) provides that "[t]he parties shall equally share in
the cost of all agreed upon extracurricular activities
of the children, and . . . equally share the cost of all
unreimbursed medical [and] dental expenses." Second,
section 7.4 provides that "[a]ll unreimbursed medical,
dental, orthodontic, psychological, [and] psychiatric
expenses incurred on behalf of the children shall be
shared equally by the parties." Although neither provi-
sion expressly addresses when the parties' obligation
to pay for the expenses in question terminates, both
parties claim that the language of the separation agree-
ment unambiguously supports their respective posi-
tions. For the following reasons, we conclude that both
parties have set forth a reasonable interpretation of the
separation agreement, and, therefore, that the agree-
ment is ambiguous.

First, as the plaintiff argues, it would be reasonable
to infer from the absence of any express language
requiring the parties to pay postmajority unreimbursed
medical and dental expenses that the parties did not
intend for the separation agreement to impose such an
obligation. As the plaintiff notes, the default rule in this

state is that, in the absence of an agreement to the contrary, "[t]he obligation of a parent to support a child [generally] terminates when the child attains the age of majority, which, in this state, is eighteen."[13] (Internal quotation marks omitted.) *Barbour* v. *Barbour*, 156 Conn. App. 383, 400, 113 A.3d 77 (2015). Because unreimbursed medical expenses are a component of child support; see General Statutes § 46b-84 (f) (2) (C);[14] if the parties did not agree to pay such expenses that were incurred past the age of majority, that obligation would terminate as a matter of law once the children reached the age of majority.

Moreover, when one provision of a contract contains a specific term, that may indicate that the exclusion of the same term from another provision was intentional. See, e.g., *Dolan* v. *Dolan*, 213 Conn. App. 112, 128, 277 A.3d 829 (2022) (where separation agreement provided "that the duration of alimony payments 'shall be nonmodifiable,' " absence of similar language from another provision indicated that parties did not intend latter provision to be nonmodifiable); *Ceddia* v. *Ceddia*, 164 Conn. App. 266, 274, 137 A.3d 830 (2016) ("[w]hen the parties wished to preclude one aspect of possible periodic alimony modification, they knew how to do so"). Here, section 7.3 of the separation agreement—which immediately precedes section 7.4—expressly provides that the parties' "obligation to maintain [health] insurance coverage for the children shall extend until each

---

[13] Although the age of majority in this state is eighteen; see General Statutes § 1-1d; pursuant to General Statutes § 46b-84 (b), the obligation of a parent to support his or her child after the dissolution of a marriage or legal separation extends "until such child completes the twelfth grade or attains the age of nineteen, whichever occurs first."

[14] General Statutes § 46b-84 (f) (2) (C) provides in relevant part: "An order for payment of the child's medical and dental expenses . . . that are not covered by insurance or reimbursed in any other manner shall be entered in accordance with the child support guidelines established pursuant to section 46b-215a."

of them attains the age of nineteen . . . or, if either or both attend college, through the age of twenty-three . . . ." As the plaintiff argues, the absence of similar language in section 7.4 may indicate that the parties did not intend for their obligation to pay for the children's unreimbursed medical expenses to extend past the age of majority.

The plaintiff's interpretation of the agreement is a reasonable one. Under his interpretation, the separation agreement would require the parties to maintain health insurance for their children until they reached the age at which they would be likely to enter the workforce— either after high school or, if they attend college, after completing their undergraduate education—but would not require the parties to pay for any medical or dental expenses that were not covered by insurance after the children reached the age of majority. The parties reasonably may have agreed to maintain health insurance for their children until they entered the workforce and were able to obtain coverage through an employer, while not obligating themselves to pay for any medical expenses that were not covered by insurance once the children reached the age of majority.

As the defendant argues, however, it also would be reasonable to read sections 7.3 and 7.4 of the separation agreement together, such that the parties' obligation to pay for the children's unreimbursed medical expenses is coextensive with their obligation to provide them with health insurance. According to the defendant, section 7.4 of the separation agreement cannot be read in isolation, but, rather, must be read in conjunction with section 7.3, which requires the parties to maintain health insurance for the children until they reach the age of either nineteen or twenty-three, depending on whether they attend college. The defendant argues that the inclusion of section 7.4 immediately following section 7.3 reflects a deliberate choice that "clearly evinces

[the parties'] intent to pay [the] unreimbursed medical and dental expenses while insurance is also being provided."

It is well established that "a contract must be viewed in its entirety, with each provision read in light of the other provisions . . . ." (Internal quotation marks omitted.) *Fazio* v. *Fazio*, 162 Conn. App. 236, 248, 131 A.3d 1162, cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016). "The law is clear that a contract includes not only what is expressly stated therein but also what is necessarily implied from the language used. . . . No special form of words, but that the promise appears upon a fair interpretation, is the essential." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 439, 927 A.2d 843 (2007). Here, section 7.4 is situated in article VII of the separation agreement, which generally addresses the parties' obligation to provide for their children's medical care. It also appears immediately following section 7.3, which expressly requires the parties to maintain health insurance for the children until the age of twenty-three if they attend college. As the defendant argues, the inclusion of section 7.4 immediately following that provision may indicate that the parties "intended to pay for unreimbursed medical and dental expenses for the [children] during the same time period, as any part-time college jobs they might find would almost certainly not provide adequate income which would allow them to pay those costs independent of [the parties'] support." Thus, although section 7.4 does not expressly state that the parties are obligated to pay for the children's postmajority unreimbursed medical expenses, it would be reasonable to infer that, by including that section immediately following section 7.3, the parties intended to pay for the unreimbursed expenses during the time the children are covered by their parents' insurance.

In arguing that the separation agreement unambiguously does not require the parties to pay for postmajority unreimbursed medical expenses, the plaintiff relies on the fact that section 10 of the 2019 agreement, which concerns payment of expenses for G's postsecondary education, provides that "[t]he current orders that obligate the plaintiff to pay for 60 percent and the defendant to pay for 40 percent of the reasonable and necessary unreimbursed medical and dental expenses incurred for the benefit of [G] shall remain in effect." Specifically, he argues that, if the separation agreement already required the parties to pay for G's unreimbursed medical expenses while she was in college, there would have been no reason for the 2019 agreement to include that requirement.

As the defendant argues, however, that provision of the 2019 agreement may also be construed to mean that the parties had a preexisting obligation to pay for G's unreimbursed medical expenses through the age of twenty-three, and that this obligation was not being modified by the 2019 agreement. By providing that the "current orders" requiring the parties to pay for G's unreimbursed medical expenses "shall remain in effect," section 10 of the 2019 agreement implies that the parties had an existing obligation to pay for G's unreimbursed medical expenses, and that that obligation would continue after the entry of the 2019 agreement. The parties entered that 2019 agreement on June 20, 2019.[15] As of that date, G already had turned eighteen years old, and there is no evidence in the record as to whether G was still in high school at that time. Under the

___

[15] We note that, although the first page of the 2019 agreement is dated June 6, 2019, the parties did not enter the agreement on that date. Rather, as mentioned previously; see footnote 3 of this opinion; when the parties appeared in court on that date, the defendant requested a continuance because she had just received a draft of the 2019 agreement from the plaintiff the night before. The court accepted the parties' agreement and entered it as an order of the court on June 20, 2019.

plaintiff's interpretation of the separation agreement, however, the parties' obligation to pay for G's unreimbursed medical expenses terminated as a matter of law either when she turned eighteen or when she graduated from high school, whichever occurred later. See footnote 13 of this opinion and accompanying text. Thus, under the plaintiff's interpretation of the separation agreement, if G had already graduated from high school at the time the parties entered the 2019 agreement, it would make no sense to say that the "current orders . . . shall remain in effect," because there would have been no such order in effect at that time.

In fact, another provision of the 2019 agreement seems to support the defendant's argument that section 10 was intended to reaffirm an existing obligation. Specifically, even though both parties agree that the separation agreement required them to maintain health insurance for the children through the age of twenty-three, section 9 of the 2019 agreement—which immediately precedes the provision relating to unreimbursed medical expenses—provides that "[t]he defendant shall continue to maintain health insurance for the benefit of [G] *pursuant to the parties' separation agreement.*" (Emphasis added.) That the 2019 agreement contains at least one other provision reaffirming a preexisting obligation under the separation agreement undercuts the plaintiff's contention that the parties would have had no reason to include a provision reaffirming their obligations with respect to unreimbursed medical expenses. Accordingly, we disagree with the plaintiff's contention that the 2019 agreement supports his interpretation of the separation agreement.

Because both parties have set forth reasonable interpretations of the separation agreement that is grounded in the language used in that agreement, we conclude

that the agreement is ambiguous.[16] We further conclude, therefore, that the trial court erred in construing the separation agreement unambiguously to require the plaintiff to reimburse the defendant for K's postmajority medical and dental expenses. Because the agreement is ambiguous with respect to that issue, the proper interpretation of the agreement is a question of fact that must be resolved by the trial court. See *Simpson* v. *Simpson*, supra, 352 Conn. 100. Accordingly, this case must be remanded to the trial court to make a factual determination regarding the intent of the parties, after consideration of any extrinsic evidence presented by the parties concerning that issue.[17] See id. (where separation agreement was ambiguous, court reversed remedial order and remanded case for "trial court to resolve the ambiguity in the parties' agreement through a determination of their intent after consideration of all available extrinsic evidence and the circumstances surrounding the entering of the agreement").

[16] We recognize that our analysis does not address the significance, if any, of the fact that the separation agreement contains two separate provisions—sections 3.2 (c) and 7.4—that contain substantially similar language addressing the parties' obligation to pay for the children's unreimbursed medical expenses. As a general matter, "the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous." (Internal quotation marks omitted.) *Halperin* v. *Halperin*, 196 Conn. App. 603, 616, 230 A.3d 757 (2020). In the present case, however, neither party offers a convincing explanation for the inclusion of both provisions in the agreement or for whether or how section 3.2 (c) should affect our analysis of whether the parties intended to pay for the children's postmajority unreimbursed medical expenses. To the extent the parties believe that extrinsic evidence may shed additional light on the meaning of these two provisions, they may present such evidence to the trial court on remand.

[17] "We recognize . . . that none of the parties on remand has an obligation to present extrinsic evidence, whether testimonial or documentary, to resolve this ambiguity. Nor does any party have an obligation to present evidence as to who drafted the agreement, such that, in the event that extrinsic evidence did not resolve the ambiguity, the contra proferentem rule could properly be applied. We simply note that a [party] who fails to present any evidence that would permit the fact finder to resolve a material ambiguity risks failing to satisfy [their] burden of proof." *Murchison* v. *Waterbury*, 218 Conn. App. 396, 415 n.19, 291 A.3d 1073 (2023).

The judgment is reversed as to the remedial order and corrected order and the case is remanded for further proceedings in accordance with this opinion; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.